198 ELISHA COPELAND Junior *versus* THE MERCANTILE INSURANCE COMPANY.

A vessel was owned by the plaintiff, the master, A and B, one quarter each ; and the plaintiff effected insurance upon her in his own name for whom it might concern, for six months. Before she sailed, he gave a power of attorney to one P to sell his quarter, and in a subsequent letter of instructions he and A authorized P and the master to sell their respective quarters after the delivery of the outward cargo. After such delivery a bill of sale under seal, of the two quarters belonging to the plaintiff and B, was made by P alone to the master for himself and A, and the master drew bills upon A in favor of the plaintiff and B for the purchase money, which were protested for non-acceptance. The vessel was lost after the sale and within the six months, but the loss was not known until after the bills had been protested. In an action on the policy by the plaintiff for the benefit of the assured ; —

It was *held*, that the power of attorney to P alone was revoked by the subsequent letter of instructions to him and the master ; —

That a sale in pursuance of such instructions must be made by the master and P jointly ; —

That the deed of sale being in the name of P, and signed " P, attorney to C," (the plaintiff,) was insufficient in point of form ; —

That the master, being an agent to sell, could not himself be the purchaser, and so nothing passed to him by the sale ; —

That as A repudiated the sale, and the ratification, if any, on the part of the plaintiff and B must have proceeded on the ground that A was a joint purchaser with the master, the sale was entirely invalid, and so the ownership of the vessel remained the same at the time of the loss as at the date of the policy ;—

That a revocation by the master, pending the action, of the plaintiff's authority to claim indemnification for the master's quarter part of the loss, did not affect the plaintiff's right to recover in this action for the other three quarters ; —

And that he might so recover under counts alleging respectively, that the insurance was made for the benefit of one of the owners, and that he was interested to the whole amount insured.

ASSUMPSIT on a policy of insurance, made on the 17th of September, 1825, by which the defendants assured for the plaintiff, for whom it might concern, 3600 dollars on the brig Joseph and appurtenances, for the term of six months from the 20th of the same September.

---

* *Ravenga* v. *Mackintosh*, 2 Barn. & Cressw. 693, was cited for the plaintiff. *Reporter.*

The *first* count alleged the insurance to have been made for the benefit of the plaintiff, William Bright and Joshua Seaver, one quarter for each, and one quarter for Porter & Greene. The *third* alleged it to have been made for the benefit of Seaver, and that he was interested to the *whole* amount insured upon the vessel. The *ninth* was similar, substituting Porter & Greene for Seaver. The *fifth* alleged it to have been made for the plaintiff's own account and benefit, and that he was interested *one quarter part* in the vessel.

A total loss happened on the 2d of March, 1826, while the vessel was on her passage from Monte Video to Boston. The defence was, that at the time of the loss no part of the vessel was owned by the plaintiff, nor by any person for whom he had caused the insurance to be made, except Bright, (who it was alleged disavowed the action,) and Seaver.

At the time of making the policy, the vessel was owned by the plaintiff, Seaver and Bright, one fourth each, and the remaining fourth by Porter & Greene. The plaintiff acted as ship's husband in fitting her out, and had authority to make insurance on the whole vessel. By a letter of instructions, signed by the plaintiff and Seaver, dated October 22, 1825, and delivered the same day, the care of the brig and cargo was committed to Bright, who was the master, and John Pedrick 3d, with instructions to proceed from Boston to Buenos Ayres, and there deliver the cargo. The letter adds, "having accomplished this, we wish the vessel to be sold, if it can be done at such a price as yourselves, who represent the other half of the vessel and cargo, think reasonable." By a letter of attorney, dated the 15th of October and acknowledged before a notary public on the 21st, the plaintiff authorized Pedrick alone to make sale of his quarter part of the vessel, stating that she was then bound on a voyage to the Brazils. On the 18th of February, 1826, at Monte Video, in consideration of 1700 dollars received of Bright, Pedrick made a bill of sale of one half of the vessel to Bright and Seaver. This instrument, in the body of it, purported to be a conveyance by Pedrick personally, but was executed in the following manner : — " John Pedrick 3d, attorney to E. Copeland jr.", and a seal. " Porter and Greene by John Pedrick 3d," and a seal. There

*Copeland*
*v.*
*Mercantile*
*Ins. Co.*

199

was no evidence in the case of any authority from Porter & Greene to Pedrick to sell the brig, or from Seaver to Bright to purchase any part of her.

The plaintiff contended that Pedrick had no authority to sell his share, nor that of Porter & Greene ; that if he had authority to sell for him, it was not executed in such a manner as to pass the property ; and that Bright had no authority to purchase for Seaver. The defendants insisted that Pedrick had lawful authority to sell, and that it was duly executed.

Two bills of exchange, one in favor of Porter & Greene for 425 dollars, the other in favor of the plaintiff for 850 dollars, were drawn by Bright on Seaver for the price agreed for the purchase between Bright and Pedrick, 425 dollars being paid in cash towards the share of Porter & Greene, and passed to their credit in Pedrick's account with them. These bills were remitted by Pedrick, but on presentment were not accepted, but were protested ; and they were also protested for non-payment. The protest for non-acceptance was before notice of the loss of the brig was received.

On the 23d of March, 1827, Bright executed a sealed instrument revoking the authority of the plaintiff to claim of the defendants indemnification on account of the loss of Bright's quarter part insured as before mentioned ; and notice of such revocation was given on the 22d of November, 1827, (pending this action,) to the defendants, accompanied with a demand in Bright's own name for indemnification, and on the 23d to the plaintiff.

The defendants contended, that from certain correspondence in the case between them and the plaintiff, it appeared that there was, in point of law, a ratification of the doings of Pedrick in regard to the sale of the brig ; which legal inference was denied by the plaintiff.

In order to have the matters of law arising on the several instruments settled, as also the effect of the correspondence, a verdict was taken for the plaintiff, subject to the opinion of the Court.

*March* 14*th.*      *Fletcher*, for the defendant. The interest of the persons for whom the action is brought, must be proved as it is alleged. *Gardner* v. *Bedford Ins. Co.*, 17 Mass. R. 613. The plain

tiff could originally recover, if at all, only on the first count ; but Bright has revoked the authority to prosecute for his benefit, and the proof does not now support that count. Paley Princ. & Ag. 134, 135 ; 3 Chit. Com. & Manuf. 223, 224 ; *Bristow* v. *Taylor*, 2 Stark. R. 50 ; *Sargent* v. *Morris*, 3 Barn. & Ald. 281.

On the counts alleging the *whole* interest insured to have been in some one of the owners of the vessel, the plaintiff cannot recover, because the proof is, that no more than a *quarter* was owned by any individual. *Graves* v. *Boston Mar. Ins. Co.* 2 Cranch, 419 ; *Lawrence* v. *Sebor*, 2 Caines's R. 203 ; *Perchard* v. *Whitmore*, 2 Bos. & Pul. 155, note.

The interest of the plaintiff and of Porter & Greene in the property insured, had been transferred before the loss ; the plaintiff therefore cannot recover in this, nor in any suit, for the loss on two quarters of the vessel. Phillips on Ins. 27. The bill of sale, it is true, is informal, and if it had relation to real estate, would be invalid, as Pedrick represents himself to be the grantor ; but a ship may be transferred without deed, and the form of the instrument is consequently immaterial. It will be objected that Bright had no authority to purchase for Seaver ; but the effect of that would be only to make Bright himself the purchaser.

Admitting that in consequence of the letter of instructions giving a *joint* authority, Pedrick *alone* had no power to sell nor Bright to purchase, yet in fact there has been a ratification of the sale, at least so far as regards the plaintiff and Seaver. Pedrick and Bright, by letters dated in February, 1826, informed the plaintiff of the sale, and he, after the receipt of them, wrote to the defendants that Seaver and Bright were the sole owners of the vessel ; and on the 26th of April a policy was made out accordingly, and Seaver gave his note for the premium.

*Curtis*, *contrà*, referred to most of the authorities cited in the opinion of the Court ; and in regard to Bright's interference in the action, he cited *Offley* v. *Warde*, 1 Lev. 235, and *Doe* v. *Brewer*, 4 Maule & Selw. 300.

Morton J. delivered the opinion of the Court. This is an action of assumpsit on a policy of insurance upon the brig

*March 29th*

Copeland
v.
Mercantile
Ins. Co.
Joseph for six months. The loss within that time by a peril insured against, and a reasonable notice and offer to abandon, are admitted.

The plaintiff procured the insurance to be made in his own name, for whom it might concern, and now alleges that it was made for the account and benefit of himself and three others, each of whom he avers was owner of one quarter part at the time of the loss as well as at the date of the policy.

It is agreed by the defendants, that the several persons named in the declaration were interested in the manner alleged, at the time of effecting the insurance ; and the defence is, that the plaintiff and Porter & Greene had sold their parts of the vessel before the loss, and at that time had no insurable inter est in her.

Before the loss, John Pedrick, assuming to act as the attorney of the plaintiff and of Porter & Greene, executed a bill of sale purporting to convey their half of the vessel to Bright and Seaver, the owners of the other half. The first inquiry will be whether any thing passed by this instrument.

Pedrick's authority to convey must have been derived either from the power of attorney of the plaintiff, or from the letter of instructions from the plaintiff and Seaver to Pedrick and Bright of a subsequent date. There is no evidence in the case of any other authority from either of the former owners. Neither of these was executed by Porter & Greene, and the act of Pedrick was wholly unauthorized by them.

That the power of attorney, while in force, authorized Pedrick to sell the plaintiff's quarter, cannot be questioned. But the letter of instructions subsequently written by the plaintiff and Seaver, gave to Pedrick and Bright a joint authority to sell the two quarters of the plaintiff and Seaver. This was inconsistent with the authority before given by the plaintiff to Pedrick alone, and when he received the instructions, he must have understood them as a substitute for the former authority They must therefore be considered a revocation of the power of attorney.

The letter of instructions conveyed to Pedrick and Bright a joint authority, which neither of them separately could execute. Co. Litt. 112 b. 181 b ; Paley on Principal & Agent,

129 ; *First Par. in Sutton* v. *Cole,* 3 Pick. 244.[1] The bill of sale was therefore unauthorized. It is manifest, too, that even had there been sufficient authority in the agent, it was not properly executed. The deed ought to have been in the name of the principal, instead of the agent. It is not now the deed of the principal. Paley, 131, 132, 133, and cases there cited.[2]

This bill of sale was therefore ineffectual to pass the property of the plaintiff and Porter & Greene ; unless power may be derived from a subsequent ratification. The instrument is not so far void as to be incapable of becoming effectual by the adoption of the principals ; and this ratification may be by implication, as well as by a direct sanction.[3] The receipt by the owner, of the purchase money, would necessarily imply a ratification of the sale ; but to be binding on the principal, the ratification must be made with a full knowledge of all the circumstances. Paley, 143, 144 ; *Smith* v. *Cologan,* 2 T. R. 189, note ; *Fenn* v. *Harrison,* 3 T. R. 757.[4]

In the case under consideration Pedrick communicated to the plaintiff the fact that he had sold, the price, and the names of the purchasers, and other circumstances attending the sale. The plaintiff expressed no disapprobation, but in applying for

Copeland
*v.*
Mercantile
Ins. Co.

---

[1] See 2nd ed. 245 and notes ; 2 Kent's Comm. (3d ed.) 633, note *b,* and cases there cited.

[2] The rule that an attorney or agent, to bind his principal, must sign the name of the principal, applies only to deeds and not to simple contracts. *New England Mar. Ins Co.* v. *De Wolf,* 8 Pick. 56; *Andrews* v. *Estes,* 2 Fairfield, 267. See *Spencer* v. *Field,* 10 Wendell, 87 ; *Means* v. *Morrison,* 1 Breese, 172; *Minard* v. *Mead,* 7 Wendell, 68; *Elwell* v. *Shaw,* 1 Greenl. 339 ; *Stinchfield* v. *Little,* 1 Greenl. 231 ; *Colburn* v. *Ellenwood,* 4 N. Hampsh. R. 102; *Jordan* v. *Trice,* 6 Yerger, 479 ; *Magill* v. *Hinsdale,* 6 Connect. R. 464; *Hovey* v. *Magill,* 8 Connect. R 680; *Berkeley* v. *Hardy,* 8 Dowl. & Ryl. 102; 5 Barn. & Cressw. 355 ; *Pentz* v. *Stanton,* 10 Wendell, 271 ; *Hills* v. *Bannister,* 8 Cowen, 31; *Barker* v. *Mechanics Fire Ins. Co.* 3 Wendell, 94; *Shelton* v. *Darling,* 2 Connect R. 435 ; 2 Kent's Comm. (3d ed.) 631 and note E ; *Spencer* v. *Field,* 10 Wendell, 87 ; *Montgomery* v. *Dorion,* 7 N. Hampsh. R. 475.

[3] See *Hanford* v. *M'Nair,* 9 Wendell, 54; *Blood* v. *Goodrich,* 9 Wendell, 68 ; 2 Kent's Comm. (3d ed.) 614.

[4] See *Thorndike* v. *Godfrey,* 3 Greenl 429 ; 2 Kent's Comm. (3d ed.) 616; *Owings* v. *Hull,* 9 Peters, 629 ; *Cunningham* v. *Bell,* 5 Mason, 168; *Bell* v. *Cunningham,* 3 Peters, 81.

a renewal of the policy for another term of six months, expressly stated that the brig was owned by Scaver and Bright. This could only have been true in consequence of his approbation of the sale by Pedrick. Also, upon the receipt of the bill drawn in payment for his quarter of the brig, he presented it for acceptance and demanded payment of it. These acts are sufficient evidence of a ratification on the part of the plaintiff.

The ratification of the sale on the part of Porter & Greene does not so clearly appear. According to the testimony of Pedrick, the money received in part payment for their quarter was placed to their credit and settled in their account. From the language used in his deposition, it does not clearly appear that this settlement was made with the knowledge and assent of Porter & Greene. They did, however, upon the receipt of the bill drawn for the remainder of the price for which their quarter was sold, present it for acceptance and for payment. These circumstances strongly tend to show, and perhaps will warrant the inference, that they assented to and confirmed the sale on their part. But still the question will recur, whether this sale passed any thing to Bright and Seaver. Could Bright, being agent to sell, purchase either for himself or as agent for another ?

It is a rule of law well settled, and founded in the clearest principles of justice and sound policy, that the agent of the seller cannot become the purchaser or the agent of the purchaser. These relations are utterly incompatible with each other. Paley, 32 ; *Barker* v. *Mar. Ins. Co.* 2 Mason, 369 ; *Church* v. *Mar. Ins. Co.* 1 Mason, 341. [1] The attempt of Bright to become the purchaser of a part of the vessel was a breach of trust on his part, and could not divest the other owners of their interest.

Seaver had given to Bright no power to purchase for him, but had authorized and instructed him with Pedrick to sell his part. This act of Bright was therefore wholly unauthorized. Has Seaver ever adopted it ? After he received information of the purchase, he procured insurance to be effected upon

---

[1] See 1 Story's Comm. Eq. 310 to 312; *Rothschild* v. *Brookman*, 2 Dow & Clark, 188; 5 Bligh, N. S. 165; 3 Simon, 153; *Crome* v. *Bullard*, 2 Cox 253; *Lees* v. *Nuttall*, 1 Russ. & Mylne, 53.

the vessel in his name for whom it might concern, for six months, to commence at the expiration of the former policy. It does not appear that he made a statement, or that any was made with his knowledge, of the names of the owners. This insurance might as well be procured by him, being owner of a quarter, as if he was owner of half. Nothing tending to show a ratification can be inferred from this circumstance. And the first opportunity which he has to act decisively upon the subject, he repudiates the contract. Before information of the loss of the vessel reached him, he refused to accept Bright's bills drawn in payment of the half which he had purchased. To hold this transfer to be valid, would be to compel him to become a purchaser without his consent.

Notwithstanding this breach of confidence on the part of Bright, the parties interested might waive all objection to his conduct and ratify his contract. And we have already seen that the acts of the plaintiff and of Porter & Greene have a strong tendency to show such waiver and ratification. But these acts were founded upon a reasonable presumption, that Seaver and Bright were to become joint purchasers and jointly responsible for the purchase money. The refusal of Seaver to adopt the contract and to accept Bright's bill, produced such an entire change of circumstances as furnished to the plaintiff and to Porter & Greene sufficient reason for disavowing a contract which perhaps before they had intended to adopt. The bill of sale purporting to be a joint contract between the parties passed no property to Bright and Seaver, or either of them, and produced no change in the ownership of the vessel.

We are therefore all of opinion, upon the facts disclosed in the case, that Pedrick had no authority to make sale of the half of the brig, that Bright had no legal right to become the purchaser, either for himself or for Seaver, and that these unauthorized acts have never been so ratified as to change the property of the former owners. The interest in the vessel remained the same at the time of the loss that it was at the date of the policy; and is correctly stated in the first count in the plaintiff's declaration.

Since the commencement of the action Bright has disavowed it and annulled the authority of the plaintiff to prose-

Copeland
v.
Mercantile
Ins. Co.

cute it, so far as that authority was derived from him.   He might well prohibit the plaintiff from maintaining the suit for his proportion of the loss ; but the policy was in the name of the plaintiff.   The action is brought by him for the benefit of himself and the other owners ; and it would be manifestly unjust that one owner, having received payment for his part of the loss, having compromised with the underwriters, or being unwilling to litigate the claim, should have the power to defeat the legal rights of the others.   Bright might well revoke the power which he had given to the plaintiff to prosecute for his benefit, but he could not annul the authority which the other owners had given to sue for them, much less the right which he had to maintain the action in his own name for his own benefit. We are therefore well satisfied, that the plaintiff is entitled to judgment for his own quarter and those of Seaver and Porter & Greene, and the verdict must be amended accordingly.[1]

206
*April 4th.*

After this opinion was delivered, *Fletcher* insisted that the declaration was insufficient.   The plaintiff, being the agent in a joint contract for four, the action brought by him must be to enforce the whole contract.   Besides, there is no count alleging the interest to be in three only, and the counts in which the whole interest is averred to be in some one of the three, are not supported by the evidence.

*April 5th.*

But *per Curiam.*   We were inclined to think the first count sufficient to sustain a judgment for three quarters of the sum insured ; that as it stated correctly the interest of all the parties for whose benefit the suit was originally brought, the revocation by Bright of the authority to prosecute any further on his behalf, ought not to be allowed to prejudice the other parties concerned ; but it is not necessary to determine this, as we are of opinion that judgment may be rendered for the plaintiff upon the other counts.

---

[1]  See 2 Phillips on Ins. 379.