# CIRCUIT COURT OF FAIRFAX COUNTY

Mary Fannie Whitley

v.

Joan Lewis et al.

September 8, 2000

Case No. (Chancery) 160331

BY JUDGE ARTHUR B. VIEREGG

On July 24 and 25, 2000, the captioned equity case was tried *ore tenus*. The case was taken under advisement. I am now prepared to decide those issues.

## Material Facts and Factual Findings

### A. *Overview*

This cause was initiated by a bill of complaint filed by Mary Whitley. Her complaint relates to certain residential realty located on Old Ox Road in Fairfax County ("Old Ox Road Property"), which was titled in her name and that of Joseph H. Boston, Sr., as joint tenants with a right of survivorship. The Old Ox Road Property was originally purchased by Mr. Boston in 1978. He later conveyed a joint tenancy interest to Ms. Whitley, who lived with him and made numerous payments related both to the parties' household and the property, on September 4, 1984. Ms. Whitley asked this Court to set aside a deed of gift by which Joan Lewis, attorney-in-fact for Joseph H. Boston, Sr., on February 26, 1999, conveyed Mr. Boston's interest in the Old Ox Road

Property to his real or reputed children, defendants Joseph H. Boston, Jr., Rita A. Boston-Toran, Kevin H. Boston, and Felicia T. Boston ("Defendant Children") shortly before Mr. Boston's death and at a time Mr. Boston had been neurologically unresponsive for almost two weeks and had been kept alive by mechanical means. Mr. Boston died on March 6, 1999. The effect of the gift was to sever the joint tenancy and to defeat the vesting of Mr. Boston's joint tenancy interest in Ms. Whitley at his death. Va. Code § 55-21.

## B. *Summary of Material Facts*

I will not set forth all the extensive evidence in this case. Indeed, in the main, the dispositive issues are legal issues. The Lewis Power of Attorney was executed by Mr. Boston on November 27, 1998. At the time, Mr. Boston was hospitalized, his left leg having been amputated above the knee on October 22, 1998. Ms. Whitley does not allege, nor does the evidence demonstrate, that Mr. Boston lacked capacity to execute the Lewis Power of Attorney. The Lewis Power of Attorney is a durable power of attorney, which comprehensively delegates widespread authority to Ms. Lewis to manage his affairs. It specifically provided:

> Know all men by these presents, that I, Joseph H. Boston, residing on Old Ox Road, Fairfax, Virginia, do hereby nominate, constitute, and appoint Joan Lewis of Lancia Court, McLean, Virginia, my true and lawful attorney in fact, for me and in my name, place, and stead . . . to make gifts from time to time of my real or personal property as in the sound discretion of my attorney may be appropriate for tax planning or other dispositive purposes. . . .
>
> And I hereby give and grant unto my said attorney in fact full power and authority to do and perform every act necessary, requisite, or proper to be done in and about the premises as fully as I might or could do were I personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue hereof. This Power of Attorney shall not terminate on disability or incompetence of the principal.

Compl. Ex. 3. In the power of attorney, Boston delegated extensive authority to Ms. Lewis to handle all of his financial affairs as well as to authorize and arrange for medical treatment on his behalf.

The evidence presented demonstrated that Mr. Boston had not theretofore made gifts to his children. Indeed, the evidence demonstrated that after leaving the mother of these children when they were young and after his divorce from their mother in September 1966, he purposefully did not thereafter interact with them.

Ms. Whitley, on the other hand, lived with Mr. Boston for twenty-six years until 1995. In 1995, Ms. Whitley began residing with Augusta H. Clausson, in McLean, Virginia, who paid her as "a companion" on a seven day a week/24 hour a day basis. This woman conveyed her home to Ms. Whitley at her death. The evidence presented as to the relationship between Ms. Whitley during Mr. Boston's last three years suggests Mr. Boston resented that Ms. Whitley was not living with him. It also suggests he was resentful of her actions in November 1998, in taking money from joint checking and savings accounts he held with her. But, there is also evidence that Mr. Boston spent nights with Ms. Whitley in McLean, that their relationship had not ended as a consequence of Ms. Whitley's companion duties, and that she often nursed him in the face of his very substantial health problems.

After Boston appointed Lewis as his attorney-in-fact, Ms. Whitley visited him in the hospital on December 3, 1998. At the time of that visit, Mr. Boston executed a durable power of attorney and Advance Medical Directive in favor of Ms. Whitley. Later, on December 18, 1998, Mr. Boston signed a one line document before a notary in which he stated: "I hereby revoke the Power of Attorney given to Ms. Fannie Whitley."

### Ms. Whitley's Claims

Ms. Whitley contends that Ms. Lewis' gift of Mr. Boston's interest in the Old Ox Road property constituted fraud or a breach of her fiduciary duties as Mr. Boston's attorney-in-fact. Reduced to their core, Ms. Whitley did not allege or present evidence demonstrating that Mr. Boston was without capacity to execute either the Lewis Power of Attorney or his revocation of her power of attorney. Instead, she alleged and attempted to prove that Ms. Lewis could not lawfully exercise her own discretion in making a gift to donees not chosen by Mr. Boston and with whom he had had no meaningful relationship. She argued that to do so would constitute tortious conduct on Ms. Lewis' part. Ms. Whitley also contended that on account of her joint tenancy in the Old Ox Road Property, Mr. Boston could not revoke her power of attorney with respect to that Property because her power of attorney constituted "a power

coupled with an interest." These arguments will be separately addressed below.

## A. *Fraud; Breach of Fiduciary Duty*

Because Ms. Whitley does not contest Mr. Boston's capacity to execute the Lewis Power of Attorney, Ms. Whitley's fraud and breach of fiduciary duty arguments translate into whether or not Ms. Lewis had authority under that power of attorney at a time when Mr. Boston was *non compos mentis* to make a gift to donees as to whom Mr. Boston had never indicated a donative intent. I conclude that this argument, which was otherwise unsupported by controlling authority, is without merit.

First, the essence of a power of attorney is to afford an attorney-in-fact authority to act for a principal when the principal cannot act for himself. Va. Code § 11-9.1. Powers of attorney are instruments, which must be construed in accordance with their plain language. *Globe Iron Const. Co. v. First Nat'l Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965). Here, Mr. Boston unambiguously declared his intent that "this Power of Attorney shall not terminate on disability or incompetence of the principal." Ms. Whitley presents no authority for the proposition that a principal's loss of capacity otherwise nullifies the attorney-in-fact's gifting authority, simply because the principal is incapacitated or unable to frame any donative intent.

Moreover, the facts do not otherwise demonstrate a lack of good faith on the part of Ms. Lewis. The evidence makes plain that when Mr. Boston was on the verge of death, as Mr. Boston's attorney-in-fact, she exercised discretion to give Mr. Boston's interest in the Old Ox Road Property to those believed to be his children, his heirs at law. It cannot be known whether Mr. Boston would have taken this action had he been competent. However, given Ms. Lewis' understanding that he did not wish Ms. Whitley to have any interest in the Old Ox Road Property (irrespective of whether that was in fact the case),[1] and since his putative heirs would otherwise have inherited Mr.

---

[1] This case was characterized by accusations and counter accusations of bad faith on the part of Ms. Lewis and Ms. Payne on one hand, and Ms. Whitley on the other. It was evident that virtually every witness who testified was sympathetic to one side or the other. Based on all the evidence presented, this Court concluded that in 1998, the relationship between Mr. Boston and Ms. Whitley continued but was strained on account of Ms. Whitley's duties in McLean. Taken as a whole, moreover, it would seem that throughout their relationship, Mr. Boston had been a man given to alcoholic excesses and mood swings, so that it would not be unusual that he both

Boston's estate, Ms. Lewis' exercise of Mr. Boston's power of attorney was reasonable and not exercised in bad faith.

## B. *The Interpretation of the Lewis Power of Attorney*

Whitley contends that the Lewis Power of Attorney did not expressly authorize Ms. Lewis to make a gift of Mr. Boston's interest in the Old Ox Property to the Defendant Children. Although the power afforded Lewis specific gift-giving power, Ms. Whitley contended that the following language "to make gifts from time to time of my real or personal property as in the sound discretion of my attorney may be appropriate *for tax planning or other dispositive purposes. . . .*" (emphasis added) only authorized Ms. Lewis to make gifts for tax planning purposes. Ms. Lewis and the Defendant Children argue, however, that the phrase "or other dispositive purposes" necessarily comprehends a wide range of gifts.

I find that the plain meaning of the term "or other dispositive purposes" is that Mr. Boston intended to afford Ms. Lewis broad authority to make gifts of his property, both for tax planning and "other" purposes. It is also consonant with the overall tenor of the Lewis Power of Attorney, which afforded the broadest discretion possible to Ms. Lewis with respect to his property.

Ms. Whitley, however, argues that the *ejusdem generis* rule of statutory construction requires a different reading of the power. According to this rule, "where general words follow particular words, the former are to be regarded as applicable to the persons or things particularly mentioned." *Standard Ice Co. v. Lynchburg Ice*, 129 Va. 521, 532, 106 S.E. 390 (1921). It must first be recognized that artificial rules of contract construction, such as the rule of *ejusdem generis*, only control the interpretation of the terms of an instrument or contract if the plain meaning of the instrument or contract cannot otherwise be gleaned from the language used. *Gooch v. United States*, 297 U.S. 124, 128, 80 L. Ed. 522, 56 S. Ct. 395 (1936). Because Mr. Boston clearly manifested his intention to afford Ms. Lewis broad powers over his property for all dispositive purposes, and not merely those related to tax planning, resort to the *ejusdem generis* rule is unnecessary and ·inappropriate. Furthermore, the Supreme Court of Virginia has warned that the rule of *ejusdem generis* should be used with caution. Here, Mr. Boston's use of the term "or" between the words "tax planning" and "other dispositive purposes"

---

continued on one hand to care greatly for Ms. Whitley, while on the other making statements that he wished to take steps contrary to her financial interests.

plainly negates the supposition that "other dispositive purposes" was intended to denote tax planning purposes. *Standard Ice Co.*, 129 Va. at 532. This wording is different than those situations where the *ejusdem generis* rule of construction is employed, that is, where a general term is indicated and a list of two or more specific examples falling within the general category follow to define the category. *Id.* Here, the more specific term, "tax planning," is expressed first, followed by a more general category.

For the foregoing reasons, I find that Mr. Boston delegated broad gift giving power to Mrs. Lewis pursuant to the Lewis Power of Attorney.

## C. *Va. Code § 11-9.5*

Ms. Whitley, however, also invoked the general equity powers of this court to set aside the February 26, 1999, deed of gift on other grounds. Her arguments were based on an interpretation of Va. Code § 11-9.5(A) and (B), which provide as follows:

> A. If any power of attorney or other writing (i) authorizes an attorney-in-fact or other agent to do, execute, or perform any act that the principal might or could do or (ii) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or deal with the principal's property, the attorney-in-fact or agent shall have the power and authority to make gifts in any amount of any of the principal's property to any individuals or to organizations described in §§ 170(c) and 2522(a) of the Internal Revenue Code or corresponding future provisions of federal tax law, or both, in accordance with the principal's personal history of making or joining in the making of lifetime gifts.
>
> B. Subsection (A) shall not in any way impair the right or power of any principal, by express words in the power of attorney or other writing, to authorize, or limit the authority of, any attorney-in-fact or other agent to make gifts of the principal's property.

### 1. *Va. Code § 11-9.5(A)*

Whitley argued that an attorney-in-fact may only make gifts if (a) the gift is expressly described in the document creating the power in accordance with Va. Code § 11-9.5(B); or (b) if the gift is otherwise "in accordance with the principal's personal history of making or joining in making of lifetime gifts" pursuant to Va. Code § 11-9.5(A). Lewis and the defendant donees, however,

contend that Va. Code § 11-9.5(A) provides that if a power of attorney affords an attorney-in-fact broad powers to act in a principal's stead in comprehensively conducting his affairs, it furnishes the attorney-in-fact authority to make gifts even though such a power to make gifts is not set forth in the power of attorney. Lewis further argues that the words of limitation in § 11-9.5(A), "in accordance with the principal's personal history of making or joining in making of lifetime gifts," refers only to charitable gifts.

I conclude that Va. Code § 11-9.5(A) is inapplicable to the Lewis Power of Attorney. Va. Code § 11-9.5(A) addresses when a gift can be made pursuant to a general power despite the fact that the power to make gifts is *not* expressly contained in the power-of-attorney. In this case, the Lewis Power of Attorney expressly afforded Ms. Lewis gift-giving authority. Accordingly, Va. Code § 11-9.5(A) is inapplicable to this case, despite the statutory construction arguments made by the parties with regard to it.

### 2. *Va. Code § 11-9.5(B)*

Unlike Va. Code § 11-9.5(A), § 11-9.5(B) pertains to powers of attorney expressly stipulating that an attorney-in-fact has the authority to make gifts. It specifically states that "Subsection A shall *not in any way impair the right or power* of any principal, by express words in the power of attorney or other writing, to authorize, or limit the authority of, any attorney-in-fact . . . to make gifts of the principal's property." Va. Code § 11-9.5(B) (emphasis added). Since the power to make gifts was expressly delegated to Ms. Lewis, she had the power to make gifts without limitation arising from Va. Code § 11-9.5(A). Since, as discussed above, the plain meaning of the Lewis Power of Attorney language accorded Ms. Lewis general gift-giving powers, Ms. Whitley's argument to the contrary must fail.

This conclusion is confirmed by the express language of Va. Code § 11-9.1, which indicates that a durable power of attorney (one by which the powers to make gifts, *inter alia*, are delegated even after the principal has become incapacitated) confirms that Ms. Lewis had the power to make gifts to the Defendant Children, even though the gifts had not theretofore been specifically authorized by Mr. Boston. Ms. Whitley has presented no statutory or decisional authority negating the broad discretion of an attorney-in-fact pursuant to a general power of attorney, as Mr. Boston's under consideration here, to designate both donees and the nature and amount of gifts to those donees. Her arguments based on Title 11 of the Virginia Code accordingly fail.

## D. *A Power Coupled With an Interest*

Ms. Whitley's final argument is that Mr. Boston also appointed her as attorney-in-fact with dispositional power over his property; that this power-of-attorney was irrevocable as to his interest in the Old Ox Road property because Ms. Whitley's authority constituted a power coupled with an interest *vis-à-vis* that property; that Mr. Boston's putative attempt to revoke the power of attorney given her was therefore ineffective; and that the continuing viability of the Lewis Power of Attorney as the basis for Ms. Lewis to make a gift of the Old Ox Road Property was negated by the existence of Ms. Whitley's power of attorney, which was irrevocable with regard to the Old Ox Road Property.

This argument presents two issues. The first is whether Ms. Whitley's appointment as Mr. Boston's attorney-in-fact fourteen years after he had conveyed a joint tenancy with survivorship in the Old Ox Road Property created an irrevocable power coupled with an interest so that Mr. Boston's December 18, 1998, revocation of the Whitley Power of Attorney was ineffectual as to the Old Ox Road Property. Assuming that the Whitley Power of Attorney was irrevocable with regard to that Property, the second issue is whether the continued viability of Ms. Whitley's Power of Attorney with regard to the Old Ox Road Property is inconsistent with the continued viability of the Lewis Power of Attorney as to the Property, in other words, was the Lewis Power of Attorney impliedly revoked by Mr. Boston's execution of the Whitley Power of Attorney with respect to the Old Ox Road Property?

### 1. *Agency Coupled With an Interest*

Both Virginia decisional law and other authorities recognize that the coupling of a power with an interest makes the power irrevocable. *Hunt v. Rousmanier's Adm'r.*, 21 U.S. (8 Wheat.) 174, 5 L. Ed. 589 (1823), 3 Am. Jur. 2d, *Agency*, §§ 63 *et seq.* Generally, a power coupled with an interest is described as follows: "In order that a power may be irrevocable because coupled with an interest, it is necessary that the interest be in the subject matter of the power. In other words, the person clothed with the power must derive, under the instrument creating it or from the nature of their relationship, a present or future interest in the thing or subject itself on which the power is to be exercised. . . ." Am. Jur. 2d, *Agency*, § 65. Here, it is plain that the Whitley Power of Attorney applied to the Old Ox Road Property, since Mr. Boston was seised of that real estate when he signed the Whitley Power of Attorney and he expressly delegated authority to Ms. Whitley pursuant to her

power of attorney to dispose of the Property. In a separate letter to counsel, I raised the issue of whether the fact that Ms. Whitley's deed from Mr. Boston, by which she received a joint tenancy interest in the Old Ox Road Property, predated her power of attorney negated her power of attorney as being a power coupled with an interest. I invited counsel for the parties to explore the early English common law which became part of the American common law and other authorities which might shed light on this issue. (Letter from J. Vieregg to R. Adams and C. Jorgenson of August 2, 2000.) I received no authorities, persuasive or otherwise, which would disqualify the Whitley Power of Attorney as being a power coupled with an interest. Moreover, in *Agency — Power Coupled With an Interest*, 28 A.L.R.2d § 2, it is stated: "However, it is also held that the interest *need not* be derived from the instrument creating the power, and other cases recognize a power coupled with an interest where the interest is not derived from the principal" (emphasis added). The early American case, *Bergen v. Bennett*, 1 Cai. Cas. 1, 2 Am. Dec. 281 (N.Y. 1804), is cited for the first proposition that the interest and power need not be derived from the same instrument. In that case, the power was given in one instrument to empower a creditor to collect a note. Both documents were part of the same transaction. Here, the execution of the power post-dates Ms. Whitley's acquisition of her joint tenancy by fifteen years. Nevertheless, since both parties had made substantial contributions to the Old Ox Road household, it can be inferred that Mr. Boston wished Ms. Whitley to have control of the property when he executed the power of attorney in her favor, a result consonant with his earlier conveyance to her with a common law right of survivorship. Therefore, there is a relationship between Ms. Whitley's joint interest and the authority conferred upon her by Mr. Boston's execution of the power of attorney in her behalf. I conclude, therefore, that the Whitley Power of Attorney constituted a power coupled with an interest and was irrevocable.

Having found that the Whitley Power of Attorney was irrevocable, the question becomes whether Mr. Boston's making of the Whitley Power of Attorney demonstrated his intention to revoke the Lewis Power of Attorney. No Virginia authority on this point has been presented. However, the preponderance of authority I have reviewed from other jurisdictions supports the proposition that, in the absence of language in the competing powers of attorney indicating a contrary intention (for example, a power of attorney granted to two persons "either of whom may act"), the second power of attorney is generally construed by necessary implication to revoke the first. *Copeland v. Mercantile Ins. Co.*, 23 Mass. 198 (1828); *Webb v. Brooks*, 42 Ohio L. Abs. 1, 58 N.E.2d 812 (Ohio App. 1944); *In the Matter of Alvon Restaurant*, 167 F. Supp. 452 (1958). The New York decision in *Whiting v.*

*Marine Midland Bank*, 80 Misc. 2d 871, 365 N.Y.S.2d 628 (1975), which, as here, addressed the effectiveness of successive powers of attorney, is especially persuasive in this regard. 365 N.Y.S.2d at 644. From the totality of the facts here, it is plain that Mr. Boston, who was in poor health, was confronted by relatives represented by Ms. Lewis on one hand and Ms. Whitley on the other with requests that they act in his stead. Given the relationship of the relatives and Ms. Whitley, it is simply implausible that Mr. Boston would have intended that the two powers of attorney would co-exist. While it is true that there is evidence that he intended to change his mind and attempted to revoke the Whitley Power of Attorney, the fact remains that the power of attorney was irrevocable with respect to the Old Ox Road Property when executed and further that at the time the circumstances suggest it was intended to supplant the earlier Lewis Power of Attorney as to that Property. Accordingly, the Lewis Power of Attorney was necessarily revoked *vis-à-vis* the Old Ox Road Property when Mr. Boston executed the Whitley Power of Attorney, and Ms. Lewis' unexercised authority as to the Old Ox Road Property was necessarily vitiated. Her attempted exercise of that authority was therefore unlawful and a nullity. By operation of law, Mr. Boston's interest in the Old Ox Property vested in Ms. Whitley at his death.

### Conclusion

For the foregoing reasons, the prayer of Ms. Whitley to declare the Lewis Power of Attorney null and void is denied; the prayer to set aside the Deed of Gift of February 26, 1999, and to declare Ms. Whitley the owner of the Old Ox Road Property is granted; and Ms. Whitley is awarded her costs.